John ARCHER, Appellant,

v.

J. R. SIMPLOT COMPANY, formerly
Simplot Investment Company, a
corporation, Appellee.

No. 6421.

United States Court of Appeals
Tenth Circuit.

April 6, 1961.

Gordon I. Hyde, Salt Lake City, Utah,
for appellant.

Marvin J. Bertoch, Salt Lake City,
Utah (Ray, Quinney & Nebeker and William J. O'Connor, Salt Lake City, Utah,
on the brief), for appellee.

Before HUXMAN, PICKETT and
LEWIS, Circuit Judges.

HUXMAN, Circuit Judge.

This was an action for breach of contract in which John Archer,[1] the appellant, sought to recover from J. R. Simplot Company,[2] formerly Simplot Investment Company, the appellee, general damages in the sum of $200,000, and exemplary damages in the sum of $100,000. Archer has appealed from a judgment in favor of Simplot.

The action arises out of two contracts between the parties—a contract of August 1, 1950, and a contract of February 29, 1952. By the contract of August 1, 1950, the parties entered into a joint venture in which it was agreed that Archer should endeavor to secure oil and gas leases which should be submitted to Simplot, and the title to which, when accepted by Simplot, should be vested in it. The full management and control of such properties were to be lodged with Simplot. The contracts gave Archer a 25 per cent interest and Simplot a 75 per cent interest in all profit realized from the venture. Both contracts specifically described the property that formed the corpus of the joint venture. No leases other than those set out in the agreements were ever acquired under these contracts.

Paragraph 9 of the first contract, in material part, provides that " * * * Simplot expressly reserves the privilege at any time following notice to Archer to release and relinquish any or all of the real property or gas and oil rights cov-

1. Herein called Archer.

2. Herein called Simplot.

ered by this agreement, in which event, Simplot should have no further obligation to pay rental, royalty, purchase price or any payments in the nature thereof with respect to such relinquished lands. In such event and upon request by Archer, Simplot agrees to cause to be assigned, transferred and conveyed such interest in those lands to Archer * * *." The contract of February 28, 1952, contained a similar provision with respect to notice, differing only in that there was no requirement for assignment of leases.

It was stipulated by the parties, and found by the court, that the first agreement was terminated about April 12, 1951, and that the second agreement was terminated April 22, 1954. Archer's cause of action is predicated on his contention that Simplot cancelled leases without giving notice as required by the contract. The focal point of the case is whether notice, as contemplated by paragraph 9 of the agreement of August 1, 1950, and paragraph 6 of the agreement of February 28, 1952, was given by Simplot evidencing its intention to cancel the leases before cancelling and surrendering them. The court found that notice, as required by the contracts, was given.

■ It is to be noted that the contracts do not specify any form of notice but merely provide that Simplot reserves the privilege at any time "following notice to Archer" to relinquish the leases and divest itself of any further obligation to pay rentals. In the absence of a requirement as to a specific kind of notice, acts or conduct sufficient to apprise one of the facts of which he is entitled to have notice, complies with a general provision for notice.[3]

Bearing on the question of notice, the record shows these facts. Under date of May 14, 1951, Hawley and Marcus, attorneys for Archer, wrote W. Grant Kilbourne, secretary of Simplot, stating that Archer had submitted to them Simplot's letter of May 10, 1951, "informing him [Archer] of your intention to relinquish the outstanding oil and gas leases negotiated under the aforesaid contract"— the 1950 contract. By letter of May 23, 1951, Simplot advised Archer that it had informed him of its intention to withdraw all applications for further leases and that it intended to dispose of the leases it held under the agreement. The letter stated that if Archer would like to acquire those leases or had any prospective purchaser, Simplot would like to hear from him. The letter concluded by stating, "We would suggest you make your intentions known immediately in regard to the above, inasmuch as we should like to have the complete liquidation of any and *all gas and oil holdings accomplished and all applications for such holdings withdrawn by no later than June 15, 1951.*"[4] In addition, there is the testimony of Grant Kilbourne, Simplot's Vice President, who handled the negotiations, who testified that he orally stated to Archer on numerous occasions that Simplot intended to relinquish and release the leases covered by both the agreements. There is evidence that Simplot stated to Archer that he intended to ride out what they had but assume no further obligations with respect to them. What Simplot meant becomes clear when we consider the leases.

The leases were all five-year leases. At the time of their execution, the lessees were required to pay three years' rental. At the expiration of three years, the lessee would become liable for the additional two years' rental unless the leases were cancelled and surrendered. Simplot made it clear to Archer that it did not intend to pay these additional rentals. Aside from the notice Simplot claims it gave him of its intention to cancel the leases, Archer must have known from their terms that cancellation would be required at the end of the three-year period to avoid obligation for the remaining two years.

---

3. Gibson v. Jensen, 48 Utah 244, 158 P. 426; 66 C.J.S. Notice § 3, pp. 637, 638, and 639.

4. Emphasis supplied.

There is no evidence in the record that Simplot released any leases during the three years for which rental had been paid. In fact, nothing would have been gained by doing so. That term was paid for, and during that time the lessees had a "free ride" so to speak. At page twenty-five of the record appears a request for admissions from plaintiff. Paragraph four thereof lists the leases by numbers and gives the dates on which each lease was released and a date when an application for a new lease was made by a third party. Plaintiff's Exhibit 28 sets out an example of the type of leases used. The lease set out is dated September 1, 1951. It is to be noted that in paragraph four of the request for admissions, which sets out the leases and the release dates thereof, the first date on which leases were relinquished and released was September 1, 1954. This was three years after the date of the September 1, 1951 leases. The other leases for which release dates are set out are not shown in the record but, no doubt, their releases followed a like pattern.

■ The court found that in 1951, Simplot gave Archer written notice that it intended to release and relinquish the leases, and that in 1953, it notified him, in writing and orally, that it was releasing and relinquishing all the leases it held under the two agreements. We think that the court's finding that adequate notice of Simplot's intention to cancel and relinquish these leases was given.

■ A secondary contention is made that J. R. Simplot was guilty of misconduct during the trial. This contention arises out of the following circumstances. The court recessed this trial in order to sentence a defendant in a criminal case. The parties in this case apparently remained in the courtroom. The court expressed some desire to place the defendant on probation. Apparently, during this discussion, Simplot, who has a ranch, arose and offered to have the defendant paroled to him at his ranch. The record shows that he had accepted other defendants on parole at his ranch. Discussions were had between the court and Simplot which resulted in the court paroling the defendant to Simplot's custody. Appellant's contention that this influenced the trial judge in his decision of the case is not supported by the record. The record shows that the court gave this case painstaking and careful consideration. Its findings and conclusions find support in the record and the judgment is, therefore, affirmed.